FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Sep 06, 2017**

SEAN F. McAVOY, CLERK

*ORIGINAL*

JOSEPH H. HARRINGTON
Acting United States Attorney
Eastern District of Washington
Earl A. Hicks
George J.C. Jacobs, III
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:(509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. 2:16-CR-00207-RMP-1 |
| vs. | |
| TERRY RUSSELL HUNT, | Plea Agreement [Fed.R.Crim.P. Rule 11(c)(1)(C)] |
| Defendant. | |

Plaintiff, United States of America, by and through JOSEPH H. HARRINGTON, Acting United States Attorney, for the Eastern District of Washington, and Earl A. Hicks and George J. C. Jacobs, III, Assistant United States Attorneys for the Eastern District of Washington, and Defendant TERRY RUSSELL HUNT, and the Defendant's counsel, Richard Louis Bechtolt, Jr. agree to the following Plea Agreement:

1.     Waiver of Venue, Guilty Plea and Maximum Statutory Penalties:

The Defendant, TERRY RUSSELL HUNT, agrees to waive venue in the Western District of Washington and agrees to plead guilty in the Eastern District of Washington to Counts One, Two, and Three of the Information filed on September 6, 2017, charging Defendant with three (3) counts of Aiding and Abetting False Entries

PLEA AGREEMENT - 1

By a Firearms Dealer, in violation of 18 U.S.C. §§ 922(m), 924(a)(3)(B) and 18 U.S.C. § 2.  The Defendant understands that the three (3) charges contained in the Information are Class A Misdemeanors.  The Defendant also understands that the maximum statutory penalty for each count of Aiding and Abetting a False Entry By a Firearms Dealer, in violation of 18 U.S.C. §§ 922 (m), 924(a)(3)(B) and 18 U.S.C. § 2, is not more than one (1) year imprisonment; a fine not to exceed $100,000; a term of supervised release of not more than 1 year; and a $25.00 special penalty assessment.  The Defendant understands that the Court can impose consecutive sentences.

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    <u>Fed.R Crim.P. 11(c)(1)(C) Agreement</u>:

The Defendant understands that this is a Plea Agreement pursuant to Fed.R. Crim.P. 11(c)(1)(C) and that the United States may withdraw from this Plea Agreement if the Court imposes a lesser sentence than agreed upon.  The Defendant further understands that the Defendant will have the option to withdraw from this Plea Agreement if the Court imposes a sentence harsher than agreed upon.

3.    <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement.  Sentencing is a matter that is solely within the discretion of the Court.  The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

PLEA AGREEMENT - 2

However, if the Court accepts this Plea Agreement under Fed.R.Crim.P. 11(c)(1)(C), the Court is bound by the terms contained herein.

    4.   <u>Waiver of Constitutional Rights</u>:

The Defendant understands that by entering his pleas of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a)   The right to a jury trial;

    b)   The right to see, hear and question the witnesses;

    c)   The right to remain silent at trial;

    d)   The right to testify at trial; and

    e)   The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, the Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

    5.   <u>Elements of the Offense</u>:

The United States and Defendant agree that in order to convict the Defendant of Aiding and Abetting a False Entry By a Firearms Dealer in violation of 18 U.S.C. §§ 922(m), 924(a)(3)(B) and 18 U.S.C. § 2, as charged in Counts One, Two, and Three of the Information, the United States would have to prove beyond a reasonable doubt the following elements as to each Count:

    (a).   First, on or about March 25, 2013 [Count One], April 26, 2013 [Count Two], August 9, 2013 [Count Three], the unnamed individual in Counts [One], [Two], [Three] had been issued Federal Firearms License x-xx-xxx-xx-xx-xxx52, which was issued by the ATF Licensing Section, under the trade name of xx Co., located in Olympia, Washington;

PLEA AGREEMENT - 3

(b).    Second, that on or about March 25, 2013 [Count One], April 26, 2013 [Count Two], August 9, 2013 [Count Three] in the Western District of Washington, Defendant did knowingly aid, abet, induce and procure a licensed firearms dealer [as described in Counts One, Two, and Three], to make false entries about the actual buyer in records which the licensed firearms dealer was required to keep pursuant to section 923 of Chapter 44, Title 18, United States Code, and regulations enacted under that statutory authority, that is, those records (ATF Forms 4473) required to be completed and retained by Title 18, United States Code, Section 923(g)(1), in connection with the sale of the firearms described in [Counts One, Two, and Three]; and

(c).    Third, that Defendant aided and abetted the federal firearms dealer in making the false entries and Defendant and the federal firearms dealer knew they were false.

6.    Factual Basis and Statement of Facts:

The United States and Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty pleas. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

In approximately November 2009, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") initiated an investigation of TERRY RUSSELL HUNT, MARY ALICE HUNT, RUSSELL MELVIN HUNT and DEREK JON HUNT (hereinafter "Defendants") because ATF suspected they were engaged in the illegal sale of firearms at the Big Reno Gun Show (BRGS) at the Grand Sierra Resort in Reno, Nevada. The BRGS occurs three times a year, generally in the spring, summer

PLEA AGREEMENT - 4

and fall.  Each show lasts approximately three days.  ATF's investigation revealed that Defendants routinely rented and operated a vendor booth at the BRGS and sold firearms.  Defendants' booth was known as "Hunt Family Farms."  They operated their booth at every BRGS through November 2015.  At least two of the Defendants staffed the booth and sold firearms during each BRGS.  ATF's investigation revealed that Defendants sold approximately 465 firearms, totaling approximately $273,954 in sales, at the BRGS between June 2012 and November 2015.  Defendants sold firearms (which they initially purchased in the State of Washington) from their booth at the BRGS.  At the BRGS, Defendants routinely sold firearms to customers who were not Washington residents.

ATF's investigation revealed that Defendants, when purchasing firearms in Washington State, represented on ATF Forms 4473 that they were purchasing the firearms for themselves,however, Defendants' records seized by ATF show the same firearms were being sold at the BRGS.  The Defendants also used a straw purchaser to acquire firearms inventory to sell at BRGS.  The Defendants routinely used cash proceeds from BRGS firearm sales when purchasing firearms from a Federal Firearms Licensee (FFL).[1]

Federal law requires that an FFL complete and maintain an accurate ATF Form 4473, Firearms Transaction Record, to document the transfer of firearm(s) to an unlicensed individual.  The Form 4473 is completed by both the purchaser and the FFL and contains full identifying information concerning the purchaser, firearms, date of transfer, and FFL number.  ATF has promulgated a regulation, codified at 27 C.F.R. § 478.124, that governs the preparation and maintenance of Form 4473, which requires *inter alia*, the buyer to certify that he or she is the actual buyer of the firearm.  The primary purpose of the Form 4473 is to determine the eligibility of the purchaser

[1] An FFL is any person, partnership, or business entity holding a valid license issued by ATF under the authority of 18 U.S.C. Chapter 44 that allows them, or their employees, to "engage in the business" of dealing firearms.

PLEA AGREEMENT - 5

to legally acquire and possess firearms. An FFL must maintain a Form 4473 for at least 20 years.

A straw purchase occurs anytime an individual purchases a firearm for someone else, unless the purchase is a gift. Form 4473 notifies a buyer that purchasing a firearm for someone else (if it is not a gift) violates federal law. On the first page of the form, the buyer is asked: "Are you the actual transferee/buyer of the firearm … ?" The question is followed by a warning in bold print that states: **"You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person."** The purchaser is also referred to the instructions for answering this question, which provides simple examples of permissible and impermissible purchases. Finally, the buyer's certification explicitly states that falsely answering "yes" to the actual buyer question is a crime punishable as a felony. The Form 4473, therefore, clearly indicates that a violation occurs even where the middle man acts on behalf of one who could lawfully purchase the firearm.

Purchases involving multiple sales of firearms at one time are recorded in one Form 4473. Form 4473 requires the purchaser of the firearm to certify that every answer is "true, correct, and complete." ATF Forms 4473 also contain the following statement immediately above where the purchaser signs their name: "I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of law (See instructions for question 16)."

On April 18, 2012, ATF Special Agent (SA) Heidi Wallace issued an ATF Cease and Desist Warning Letter to Defendant TERRY RUSSELL HUNT. The ATF Letter officially notified Defendant TERRY RUSSELL HUNT that his actions constituted dealing without a license and served as a warning to Defendant TERRY RUSSELL HUNT to refrain from the business of dealing in firearms until he sought and obtained an FFL through ATF. SA Wallace informed Defendant TERRY RUSSELL HUNT that Federal law permitted him to only sell firearms to someone

PLEA AGREEMENT - 6

from his own state.  Defendant TERRY RUSSELL HUNT stated that other Washington residents sell firearms at the BRGS and they sell to everyone.  Defendant TERRY RUSSELL HUNT stated that he did not think it was his problem whether someone from California could have a gun or not, and that it was up to the purchaser to know what they can do.  SA Wallace told Defendant TERRY RUSSELL HUNT that since he is from Washington State, he can only sell firearms to Washington residents.  SA Wallace told Defendant TERRY RUSSELL HUNT that he was to refrain from selling firearms without a federal firearms license.  SA Wallace told Defendant TERRY RUSSELL HUNT that repetitively using the proceeds from firearms sales to repetitively purchase additional firearms to sell was a violation of federal firearm laws.  SA Wallace advised Defendant TERRY RUSSELL HUNT that ATF would assist him in obtaining a federal firearms license.

ATF's investigation revealed that on March 25, 2013, April 26, 2013, and August 9, 2013, Defendant TERRY RUSSELL HUNT recruited a straw purchaser (identified herein by the initials "D.H.") to purchase firearms from an FFL in Olympia, Washington so the Defendants would have inventory to sell at the Defendants' vendor booth at the BRGS.  The firearms were purchased from "J.H." and "J.B.," who owned or operated a business identified herein as "C.A. Co.," and held FFL number x-xx-xxx-xx-xx-xxx52, that was issued by the ATF Licensing Section.

On March 25, 2013, April 26, 2013, and August 9, 2013, D.H. purchased these firearms from the FFL for the Defendants to sell at the BRGS:  Smith & Wesson, Model 36, .38 SP, Revolver, bearing serial number ACH3992; Glock, Model 26, 9mm, SN UPY937; Glock Model 23, .40 caliber, SN UKR876, Kimber, Model Compact, .45 caliber, bearing serial number KCO5513; Rock River Arms, AR-15, 5.56mm, Rifle, bearing serial number LH104728; Rock River Arms, AR-15, 5.56mm, Rifle, bearing serial number LH104730; Savage, Model 42, .22LR/.410 gauge, Rifle, bearing serial number H856503; Mossberg, Model 464, .30-.30 Rifle, bearing serial

PLEA AGREEMENT - 7

number LA040519; Kimber, Model CDP, .45 ACP caliber, bearing serial number K101568; Ruger, Modle LCP, .380 ACP caliber, Pistol, bearing serial number 371145406; Smith & Wesson, Bodyguard, .380 caliber, Pistol, bearing serial number KAR3743; and Smith & Wesson, Bodyguard, .380 caliber, Pistol, bearing serial number KAR3698.

When ATF interviewed D.H. about these transactions, D.H. stated that Defendant TERRY RUSSELL HUNT told him he did not like to fill out the paperwork when purchasing firearms, so D.H. agreed to falsely represent that he was the true purchaser of the firearms on ATF Forms 4473. The straw purchases and false representations occurred in front of J.H. and J. B. who were required to maintain accurate records of the transactions. D.H. never took possession of the firearms and Defendant, TERRY RUSSELL HUNT, paid C.A. Co directly in cash for the firearms at the time D.H. filled out the ATF Form 4473 in the presence of J.H. and J.B. On some occasions, Defendant TERRY RUSSELL HUNT pre-ordered the firearms from the FFL even though D.H. was listed as the buyer. Defendant TERRY RUSSELL HUNT paid D.H. a fee for acting as a straw purchaser of firearms from C.A.Co. As a result, false and misleading entries were made in firearm transaction records required to be completed by and maintained by the FFL.

According to D.H., Defendant TERRY RUSSELL HUNT approached him approximately five to six times between 2012 and 2013 to act as a straw purchaser. D.H. reported he would accompany Defendant TERRY RUSSELL HUNT to C. A. Co. shortly before each BRGS. Defendant TERRY RUSSELL HUNT informed D.H. he would be taking the firearms purchased at C.A. Co. to sell at the BRGS at the Hunt Family Farms booth. It is important to note these straw purchases occurred after the April 18, 2012, ATF warning letter, which instructed Defendant TERRY RUSSELL HUNT to stop acting as a federal firearms licensed dealer.

On August 14, 2015, two ATF undercover agents (UC) contacted co-Defendant MARY ALICE HUNT at the Hunt Family Farm booth at the BRGS. Defendant

PLEA AGREEMENT - 8

TERRY RUSSELL HUNT was present at the booth.  During a conversation with the UC, co-Defendant MARY ALICE HUNT stated they were from the "State of Washington" and that it takes approximately thirteen (13) hours to get to Reno.  Co-Defendant MARY ALICE HUNT stated they load all of the guns in the back of her "Yukon."  A UC understood this to mean that the Defendants were involved in the loading, transport, unloading and set up at the Reno gun shows.  Co-Defendant MARY ALICE HUNT observed two UCs checking their phones for firearms prices and co-Defendant MARY ALICE HUNT said "mine are out the door...no tax...no transfer fee...no papers."  Co-Defendant MARY ALICE HUNT never checked the UC agents' identification or eligibility to possess firearms when she sold them two firearms.  This undercover buy was audio- and video-recorded.

On November 13, 2015, three federal search warrants were executed at Defendants' residences.  Agents recovered spreadsheets containing lists of firearms offered for sale at each "Reno Gun Show."  The lists contained the initial of the Defendant who purchased the firearm, the make, model and serial number, the purchase and offering sales price, sold date, and actual sales price.

All the firearms D.H. straw purchased for Defendant TERRY RUSSELL HUNT were inaccurately reported by C.A. Co. in their records as having been purchased by D. H. when they were actually purchased by Defendant TERRY RUSSELL HUNT.  Those firearms were illegally purchased in furtherance of the Defendants' conspiracy to illegally sell firearms without a federal firearms license at the BRGS.  The United States submits based upon the facts outlined above that Defendants TERRY RUSSELL HUNT, MARY ALICE HUNT, RUSSELL MELVIN HUNT and DEREK JON HUNT, were involved in the conspiracy at the time these straw purchases occurred and at the time the false entries were made in records required to be completed by and maintained by the FFL.

PLEA AGREEMENT - 9

7.     The United States Agrees:

        (a.) Not to File Additional Charges:

        The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving the charges contained in the Indictment under this cause number filed on December 20, 2016, unless Defendant breaches this Plea Agreement any time between his pleas of guilty and sentencing.

        (b.) To Dismiss Indictment No. 2:16-CR-00207-RMP-1:

        The Defendant understands and agrees that the United States will move to dismiss the Indictment filed against Defendant in Case No. 2:16-CR-00207-RMP-1 after Defendant has been sentenced by the Court.

8.     United States Sentencing Guideline Calculations:

        The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable advisory sentencing guideline range at the time of sentencing.

        a)     Base Offense Level:

        The Defendant and the United States agree that the Defendant's base offense level is 6.  U.S.S.G. § 2K2.1(a)(8).

        b)     Specific Offense Characteristics:

        The Defendant and the United States acknowledge that Defendant's base offense level may be increased two (2) levels or higher depnending on the number of firearms involved in the offense.  U.S.S.G. § 2K2.1(b)(1)(A)-(E).

        The Defendant and the United States acknowledge that Defendant's base offense level may be increased four (4)-levels if the Defendant engaged in the trafficking of firearms.  U.S.S.G. §2K2.1(b)(5).

PLEA AGREEMENT - 10

The United States and the Defendant will not take any position on what the applicable advisory guidelines are until after the completion of the Pre- Sentence Investigation.

      c)    <u>Acceptance of Responsibility</u>:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than September 6, 2017, the United States will recommend that Defendant receive a two (2) level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a). If the Offense Level is 16 or greater, the United States will recommend an additional one (1) level reduction for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(b).

The Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, not recommend a two (2) or three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense that occurred after entry of the guilty pleas or Defendant tests positive for any controlled substance after entry of the guilty pleas.

Furthermore, Defendant agrees to pay the $75.00 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

      d)    <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative

PLEA AGREEMENT - 11

Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

    9).   <u>Probation</u>:

The Defendant and the United States agree that a five (5) year period of probation with no jail time is an appropriate disposition of this case. Pursuant to Fed.R.Crim.P. 11(c)(1)(C), the United States will be recommending that the Court impose a sentence of five (5) years probation and the Defendant will be recommending that the Court impose a sentence of five (5) years probation.

If the Court rejects this Plea Agreement pursuant to Fed.R.Crim.P. 11(c)(5), the Defendant and the United States agree that they each may withdraw from this Plea Agreement. If the Defendant withdraws from this Plea Agreement, the Defendant may withdraw his pleas of guilty. If the United States withdraws from this Plea Agreement, the United States may prosecute the Defendant for any and all criminal conduct involving or relating to the underlying facts and circumstances of this case.

The United States and the Defendant also jointly recommend the following conditions of probation which are specifically agreed to by the Defendant:

        (a). The Defendant agrees to not seek early termination of probation.

        (b). The Defendant agrees to pay in full any fine imposed no later than six months prior to the termination of probation.

        (c). The Defendant agrees to not sell or purchase any firearms during the period of probation.

        (d). The Defendant agrees not to possess any firearms during the term of probation with the exception, that for personal safety, he may possess one handgun and one long rifle. The Defendant will identify the firearms he will possess during probation in writing by model type and serial number. The Defendant will provide this information to the United States Attorney's Office, the United States Probation Office and his attorney within two weeks of signing this plea agreement.

PLEA AGREEMENT - 12

(e).  The Defendant shall turn over all other firearms he may presently be in possession of to a third party custodian who does not reside in the same residence or is a codefendant in this case.  The third party custodian must be able to lawfully possess firearms.

The Defendant understands that if after receiving an initial sentence of a five-year term of probation, the Defendant violates any condition of his probation during such term, and is re-sentenced pursuant to such violation, the Fed.R.Crm.P. 11(c)(1)(C) agreement is null and void and the United States can recommend any term of imprisonment including consecutive terms.  This would not be a basis for Defendant to withdraw his pleas of guilty.

10.  Withdrawal from Plea Agreement:

Pursuant to this Fed.R.Crim.P. 11(c)(1)(C) Plea Agreement, the Defendant and the United States understand that, if the Court accepts this Plea Agreement, the Court is bound by the terms agreed upon by the parties.  If the Court does not accept the plea or chooses not to sentence the Defendant in accordance with the terms the Defendant and the United States have agreed upon, the Defendant and the United States each may withdraw from the plea and this agreement is null and void.

11.  Criminal Fine:

The United States and the Defendant jointly agree to recommend a fine of $10,000.00 to be paid at no less than $2,000 per year.

12.  Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $75 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13.  Abandonment / Return of Firearms:

The Defendant, TERRY RUSSELL HUNT, agrees to abandon any and all right, title and interest he has or may have in the firearms seized from his home during the

PLEA AGREEMENT - 13

execution of a federal search warrant on December 2, 2015, to the United States. The firearms are more fully described on pages 13-14 (Numbers 56 thru 106) of the Indictment filed on December 20, 2016 under cause No. 2:16-CR-207-RMP.

The attorneys involved in the case will meet to review the firearms that were seized on or about November 13, 2015, and are more fully described on pages 11, 12, and 13 (Numbers 1-55) of the Indictment filed on December 20, 2016, under cause No. 2: 16-CR-207-RMP, in order to determine what firearms to return after reviewing the records presented in the case. If any of these firearms were offered for sale at any Reno Gun Show after April 18, 2012, the Defendant agrees they will be abandoned to the United States. Defendant agrees to sign any pleadings and forms as requested by the United States to effectuate the abandonment of the firearms to the United States. The United States agrees to return to a third party custodian acting on behalf of the Defendant, TERRY RUSSELL HUNT, any firearms that belong to him that were not previously offered for sale at any Reno Gun Show after April 18, 2012.

The Defendant hereby releases and forever discharges the United States of America, its officers, agents, employees, heirs successors, or assigns, including, but not limited to the Bureau of Alcohol, Tobacco, Firearms & Explosives, from any and all actions, causes of actions, suits, proceedings, debts, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity, which Defendant, his heirs, successors, assigns ever had, now have, or may have in the future, arising in connection with the seizure, abandonment or return of any assets covered by this agreement. Defendant consents to the disposal of the abandoned assets without further notice.

14.    Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the

PLEA AGREEMENT - 14

Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15.    Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court.  Defendant hereby expressly waives his right to appeal his conviction and any sentence imposed by the Court.

Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's convictions for Aiding and Abetting a False Entry By a Firearms Dealer be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; the United States may pursue all the charges against Defendant in the Indictment filed on December 20, 2016 under cause No. 2:16-CR-207-RMP and the United States may prosecute the Defendant on all other available charges involving or arising from the illegal sale, receipt or possession of firearms.

16.    Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case.  This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities.  The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

PLEA AGREEMENT - 15

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

JOSEPH H. HARRINGTON
Acting United States Attorney

*Earl A. Hicks*                                          9/6/17
_____          _____
Earl A. Hicks                                           Date
Assistant U.S. Attorney

*[signature]*                                           9/6/17
_____          _____
George J.C. Jacobs, III                                 Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

*Terry Russell Hunt*                                    9/4/17
_____          _____
TERRY RUSSELL HUNT                                      Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to

PLEA AGREEMENT - 16

1  plead guilty as set forth in the Plea Agreement.  There is no legal reason why the

2  Court should not accept the Defendant's pleas of guilty.

3  _____          _____9/6/17_____
   Richard Louis Bechtolt, Jr.                    Date
4  Attorney for the Defendant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT - 17